UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ANTHONY D. JONES,

                Plaintiff,

  v.

STATE OF WASHINGTON, DEPARTMENT OF CORRECTIONS, JOPHN ALDANA, D. WALLACE, DAN PACHOLKE, LORI LAWSON,

                Defendants.

No. C13-5084 RBL-KLS

**REPORT AND RECOMMENDATION**
**Noted For: April 25, 2014**

      On September 5, 2013, this Court recommended that Defendants' motion to dismiss (Dkt. 29) be granted in part and denied in part and that Plaintiff Anthony D. Jones be given an opportunity to file an amended complaint. Dkt. 36. On September 20, 2013, the District Court adopted the undersigned's recommendation, dismissed Plaintiff's claims against D. Wallace, Washington State Department of Corrections, Defendant John Aldana in his official capacity as OCC Superintendent, and Defendant Dan Pacholke in his official capacity as DOC Assistant Secretary, denied the remainder of Defendants' motion to dismiss, and ordered Plaintiff to file an amended complaint within 45 days on his remaining claims. Dkt. 38. Plaintiff requested and was granted two extensions of time within which to file his amended complaint. Dkts. 41 and 45. The latest extension provided that Plaintiff file his amended complaint on or before March 28, 2014. Dkt. 45. Plaintiff has failed to do so. The undersigned recommends that Plaintiff's

REPORT AND RECOMMENDATION - 1

complaint be dismissed with prejudice for failure to state a claim cognizable under 42 U.S.C. § 1983.

## DISCUSSION

Plaintiff was granted leave to file an amended claim setting forth his claims of religious discrimination, infringement of religion, infringement of free speech, and retaliation. Dkt. 38.

**A.    Religious Discrimination**

Plaintiff, a Muslim, alleges that Defendants discriminated against him when they suspended his EFVs after discovering his "romantic" pen pal relationship with someone who is not his wife. With regard to this claim, Plaintiff was first advised that prisoners have no constitutional right to unfettered visitation and to the extent he was attempting to claim a constitutional right to visitation, his claim was without merit. Plaintiff was further advised that, to succeed on an equal protection claim, a plaintiff in a section 1983 claim must show that officials intentionally acted in a discriminatory manner. *FDIC v. Henderson*, 940 F.2d 465, 471 (9th Cir.1991); *Sischo-Nownejad v. Merced Community College Dist*., 934 F.2d 1104, 1112 (9th Cir.1991) (stating that discriminatory intent can sometimes be inferred by mere fact of different treatment).

In his complaint, Plaintiff alleges only that his extended family visits were suspended after officials discovered he was involved in a "romantic" pen pal relationship with someone other than his wife. These facts do not establish an equal protection violation. Because Plaintiff had alleged no facts from which it could be inferred that his EFV suspension was in any way related to the fact that he is a Muslim or that Defendants discriminate between Muslims and other non-Muslim prisoners for purposes of extended family visits or pen pal relationships, he was given an opportunity to file an amended complaint. He was instructed to include names,

REPORT AND RECOMMENDATION - 2

1  dates, and the circumstances surrounding his claim that he was discriminated against because he
2  is a Muslim. He has failed to do so and this claim should be dismissed.

**B.      Free Exercise of Religion**

The Court found that to the extent Plaintiff was contending that his "unequal" treatment violated his First Amendment right to practice his religion, he should be given an opportunity to file an amended complaint to properly plead this claim. Plaintiff was advised that the protections of the Free Exercise Clause are triggered when prison officials burden the practice of an inmate's religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. *Shakur v. Schriro,* 514 F.3d 878, 884 (9th Cir. 2008); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir.1997), *overruled in part* by *Shakur,* 514 F.3d at 884-85.

As a key element of a free exercise claim, under the First Amendment, a plaintiff must demonstrate that in taking a specific action, prison officials knowingly placed a substantial burden on his ability to practice his religious beliefs. *See Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 450, 108 S.Ct. 1319, 99 L.Ed.2d 534 (1988) ("[I]ncidental effects of government programs, which may make it more difficult to practice certain religions but which have no tendency to coerce individuals into acting contrary to their religious beliefs" are insufficient to state a claim under Free Exercise Clause). A "substantial burden" is one that "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs," *Thomas v. Review Bd. of Ind. Employment Sec. Div*., 450 U.S. 707, 718 (1981), or one that forces a person to "choose between following the precepts of her religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of her religion ... on the other hand," *Sherbert v. Verner*, 374 U.S. 398 (1963).

REPORT AND RECOMMENDATION - 3

In his complaint, Plaintiff does not allege that he was substantially burdened in the practice of his religion.  He merely alleges that being prohibited from writing to his pen pal is a violation of his "Muslim beliefs."  The Court extended an opportunity to Plaintiff to file an amended complaint with regard to this claim to include names, dates and the circumstances surrounding his claim.  Plaintiff was advised to identify what constitutional right was allegedly infringed and how each or any of the named defendants caused him harm by violating that constitutional right.   He has failed to do so and it is recommended that this claim be dismissed.

**C.     Violation of Free Speech**

In his complaint, Plaintiff alleges that "restrictions on a prisoner's First Amendment right to free speech violat[e] the United States Constitution 1st and 14th [Amendments]." See ECF No. 8 at 4.  It is unclear whether Plaintiff bases this claim on Defendants' interference with his ability to correspond with his pen pal or to continue his extended family visits. In either event, his pleading is deficient.

"[A] prison inmate retains those First Amendment rights"—including free speech—"that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974); *see also Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 129, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977).  Accordingly, "challenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system." *Pell*, 417 U.S. at 822.  Thus, when a prison restriction impinges on an inmate's constitutional rights, the restriction will be found to be valid if it is "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96

REPORT AND RECOMMENDATION - 4

L.Ed.2d 64 (1987).  Whether an action is reasonably related to a legitimate goal is subject to a four part test.

First and foremost, "there must be a 'valid, rational connection' between the prison regulation and the legitimate [and neutral] governmental interest put forward to justify it." *Turner,* 482 U.S. at 89 (*quoting Block v. Rutherford,* 468 U.S. 576, 586, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984)).  If the connection between the regulation and the asserted goal is "arbitrary or irrational," then the regulation fails, irrespective of whether the other factors tilt in its favor. *Turner,* 482 U.S. at 89-90. In addition, courts should consider three other factors: (1) the existence of "alternative means of exercising the right" available to inmates; (2) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (3) "the absence of ready alternatives" available to the prison for achieving the governmental objectives. *Id.* at 90.

Although Plaintiff failed to identify the alleged actions he believes impinged on his right to freedom of speech or even what form of speech was infringed, he was provided an opportunity to file an amended complaint with regard to this claim to include names, dates and the circumstances surrounding this claim and to state what constitutional right was allegedly infringed and how each or any of the named defendants caused him harm by violating that constitutional right.  He has not done so and this claim should be dismissed.

**D.     Grievance Procedure/Retaliation**

Plaintiff alleges that Grievance Coordinator Lori Lawson is "running a counterfeit program allowing favoritism to get in her way … [and] allowing her loyalty for the staff to prevent a litigate contest."  ECF No. 8 at 3.  He does not allege what rights were violated nor does he describe how such rights were violated.

REPORT AND RECOMMENDATION - 5

Plaintiff was first advised that there is no constitutional right to a prison grievance system. *See, Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003). Moreover, if the state elects to provide a grievance mechanism, violations of its procedures do not give rise to § 1983 claims. *Hoover v. Watson*, 886 F. Supp. 410 (D. Del. 1995) (aff'd, 74 F.3d 1226); *Brown v. Dodson*, 863 F. Supp. 284, 285 (W.D. Va. 1994); *Allen v. Wood*, 970 F. Supp. 824, 832 (E.D. Wash. 1997). However, prisoners do have a constitutionally protected right to file grievances and to pursue civil rights litigation without retaliation. *Rhodes v. Robinson,* 408 F.3d 559, 567 (9th Cir. 2005); *see also Hines v. Gomez*, 108 F.3d 265, 267 (9th Cir.1997) (prisoner may not be retaliated against for use of grievance system); *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir.1995) (prisoner may not be penalized for exercising the right of redress of grievances).

Because there is a constitutionally protected right to file grievances and to pursue civil rights litigation without retaliation, the Court advised Plaintiff that to prevail on such a claim, he must establish that he was retaliated against for exercising his constitutional rights; that the retaliatory action chilled the exercise of his First Amendment rights; and that the retaliatory action failed to advance legitimate penological goals, such as preserving institutional order and discipline. *Rhodes*, 408 F.3d at 567–68.

The Court provided Plaintiff an opportunity to file an amended complaint with regard to this claim to include names, dates and the circumstances surrounding this claim. He has failed to do so and this claim should be dismissed.

**CONCLUSION**

The Court denied Defendants' motion to dismiss in part to allow Plaintiff an opportunity to provide factual allegations to support his claims. Plaintiff was given ample opportunity to file

REPORT AND RECOMMENDATION - 6

an amended complaint to address noted deficiencies in his complaint and he has failed to do so. This case should be **dismissed with prejudice.**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Thomas v Arn*, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **April 25, 2014,** as noted in the caption.

**DATED** this 8th day of April, 2014.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 7